# SENTENCING MEMORANDUM ON BEHALF OF EFRAIN RODRIGUEZ

Docket No. S6 13-CR-261-06 (PKC)

Honorable P. Kevin Castel

Sentence Date: May 28, 2014

# LIST OF EXHIBITS

Letter to the Court from Elba Rodriguez…………..………....…..………………….Exhibit A

Letter to the Court from Altagracia De La Cruz……………….....…....………….Exhibit B

Letter to the Court from Evelyn De La Cruz..………………………………………….Exhibit C

Letter to the Court from Edelyn De La Cruz..……..……………………….................Exhibit D

Letter to the Court from Hector Rodriguez…………..………………………….……Exhibit E

Letter to the Court from Genoveva Rodriguez………………….……………...….Exhibit F

Letter to the Court from Ebder Fernandez……..……………….…..…..………….…Exhibit G

Letter to the Court from Chelsea Fernandez……………………………….....…....Exhibit H

Letter to the Court from Gabriella Morales..…………………………….….……….Exhibit I

Letter to the Court from Marlyn Rodriguez..……………………....….……….Exhibit J

Letter to the Court from Raul Melgarejo..……………………….….…………….…….Exhibit K

Letter to the Court from Ysabel Aguillo…....…………………………….....……..Exhibit L

Letter to the Court from Belque Ampano..…………………………….……….Exhibit M

Additional Letters from Friends………………………………………………….Exhibit N

# I. INTRODUCTION

This memorandum and attached exhibits are respectfully submitted for the Court's consideration prior to imposing sentence on Efrain Rodriguez. Mr. Rodriguez was born Eddy de la Cruz. He is an individual who grew up in a closely-knit family. His immediate family, extended family, and friends describe him as a good father, caring, and hard working. Mr. Rodriguez has had no criminal convictions prior to the instant matter. On May 15, 2013, Mr. Rodriguez was arrested and charged with one count of Conspiracy to Distribute Heroin in violation of 21 USC 846. On January 15, 2014, Mr. Rodriguez pled guilty to a single Count Information charging him with Conspiracy to Distribute Heroin in violation of 21 USC 841 (b)(1) (A). He pled guilty to his part in a conspiracy to distribute between 100 and 400 grams of heroin. Mr. Rodriguez showed recognition of responsibility for the offense and provided timely notification of his intention to plead guilty. Mr. Rodriguez is now before your Honor awaiting sentencing. He knows that no matter what this Court chooses to do at sentencing, his life will be changed forever.

**<u>Cooperation With the Government</u>**

Mr. Rodriguez asked to meet with the Government shortly after his arrest. He provided a full, honest and complete accounting of his criminal history and involvement in the charged crime. Due to the Government's belief that Mr. Rodriguez was not able to provide enough useful information to lead to the arrest or conviction of another individual, the Government has declined to provide him with a cooperation agreement. However, we respectfully suggest his honesty and forthright action at the outset of his case, along with his willingness to cooperate if necessary, should be taken into account at sentencing.

Mr. Rodriguez provided the Government with information about his contacts, his codefendants, and his actions in relation to them. However, due to his relatively minor and limited role in the conspiracy, he did not know a lot about the actions of others.

That the Government chose not to provide Mr. Rodriguez with a cooperation letter after their meeting with him indicates a belief that his cooperation was not necessary to their further investigation. It is not evidence that he did not cooperate or offer significant help to the Government's case, and this should be taken into account at sentencing.

## II. PERSONAL AND PROFESSIONAL HISTORY OF EFRAIN RODRIGUEZ

### A. EARLY YEARS

Efrain Rodriguez was born Eddy De La Cruz on October 26, 1976, in the Dominican Republic. He is the youngest of three children born to Felipe De La Cruz and Genovea Rodriguez. Mr. Rodriguez's father, who is in his late 50s, resides in Manhattan and is currently unemployed. Mr. Rodriguez's mother, who is 61 years old, resides in the Bronx, and is unemployed.

Mr. Rodriguez has twin sisters, Altagracia Evelyn and Evelyn Altagracia, age 39. They are both accountants. One lives in the Bronx, and the other lives in Queens. Mr. Rodriguez also has two maternal siblings with whom he was raised. Estella Rodriguez, age 30, works as a taxi driver and resides in the Bronx. Elba Rodriguez, age 29, is a teacher and also resides in the Bronx. Mr. Rodriguez has several paternal half siblings with whom he was not raised nor has any contact with.

Mr. Rodriguez's parents were separated prior to his birth. He was raised in the Dominican Republic by his mother. His mother owned a coffee shop in the Dominican Republic and raised Mr. Rodriguez under middle income circumstances. Mr. Rodriguez enjoyed a good relationship

with his father. He did not live with him but visited him and was financially and emotionally supportive of him and his sisters.

When Mr. Rodriguez was about 13 years old, his mother married Hector Rodriguez. Shortly thereafter, the family moved to the United States and began a new life living with their stepfather. Hector Rodriguez is the biological father of Mr. Rodriguez's two youngest siblings. Hector Rodriguez worked as an elevator mechanic in New York City. The family settled on living in the Bronx.

Since moving to the United States, Mr. Rodriguez has gone back to the Dominican Republic for long periods on several occasions. For instance, Mr. Rodriguez went back as a teenager to finish high school. He then returned to the United States and enrolled in college in Manhattan.

Mr. Rodriguez has two children from previous relationships. His daughter, age 15, resides with her mother, Idalisa Gomez, in New Jersey. Mr. Rodriguez and Ms. Gomez were in a relationship for approximately 15 years. Mr. Rodriguez's son, Brandon, age 8, lives in the Bronx with his mother, Wenny Cuesto.

**B. EDUCATION**

Mr. Rodriguez attended Universidad Noredestana in the Dominican Republic for about a year where he studied business administration. He returned to the United States after completing two semesters there. Mr. Rodriguez attended Borough of Manhattan Community College in 1998 for approximately two semesters. He attended George Washington High School in Manhattan, where he completed the 10th grade. He then went back to the Dominican Republic where he completed the requirements for his high school diploma.

## C. EMPLOYMENT

Mr. Rodriguez worked several different jobs during his lifetime thus far.

For about fourteen months in the late 2000s, Mr. Rodriguez worked for Glory Shoes, located in Queens County, New York. He earned $8.00 an hour selling shoes.

For about three months in the late 2000s, Mr. Rodriguez worked for Fabco Shoes, located in Queens County, New York, where he earned $8.25 an hour.

From 2000 to 2005, he worked for D & D Elevators, located in Elmsford, New York. He repaired elevators and earned $16.50 an hour.

For about three years in the mid-1990s, he worked for T &T Cleaners, an office cleaning company located in Manhattan. He cleaned the offices at one of Con Edison's locations and earned $12.50 an hour.

When he was six years old, he began helping his father at his father's pharmacy in the Dominican Republic. He worked there after school during his childhood.

## D. PRESENT FAMILY CIRCUMSTANCES

Mr. Rodriguez's family and friends are willing and able to provide him with the necessary support that he needs. They also regard him as a loving family man. We have included letters from each of Efrain Rodriguez's three sisters, providing a window into the characteristics both of their upbringing and of their brother. Elba Rodriguez, Mr. Rodriguez's youngest sister, writes the following:

> Growing up with him was a blessing. As the youngest of the family he would always take care of me and made sure that I always had a smile on my face; whether it would be playing silly games with me on the dinner table or simply by tending to my needs like a typical big brother will do. My brother is a very compassionate person. The norm for him is to put others first. He absolutely loves being around his family, raising his daughter and being the best provider he can be. Just his presence made it a positive ambiance, always laughing and dancing throughout the night. Therefore, this situation has become a hardship to my family as well as his daughter who is desperate to be back with her father.

Altagracia De La Cruz, one of Mr. Rodriguez's sisters, describes Mr. Rodriguez as "peaceful" and "loving." She writes the following:

> Eddy is a peaceful, loving, bright, funny and caring person. I am sure that anyone who interacts with him would conclude the same. He is a very hard working person and has worked in different fields such as McDonalds, cleaning offices and even as an elevator mechanic. We are a very close family.

Evelyn De La Cruz, one of Mr. Rodriguez's sisters, wrote to the Court describing the family's integration into the United States. She writes the following:

> We came to the United States in 1990 with a hope of studying and having a better future for us and our family. Eddy and all of my sisters graduated high school; some of us graduated from college while Eddy started working at several jobs after graduating from high school. He held jobs at stores, a cleaning services company and as an elevator mechanic helper. My brother is very kind, giving and loving person. He has two children Edelyn and Brandon De La Cruz. He has been a good father and provider for them. Eddy is very proud of his kids and misses them more and more every day. We as a family are very close and Eddy has a very strong family oriented background.

Edelyn De La Cruz, Mr. Rodriguez's 15 year old daughter wrote to the Court expressing how much she needs her father in her life and will miss him if he is not with her. She wrote (TRANSLATED FROM THE SPANISH):

> Without him I feel like my life is incomplete, but even then I am trying to stay strong and smile as much as I can even though my smile is not real. I do it so that my family will not worry about me. It's not easy for me, but until my father gets out of his problems, I will wait and wait until I can see him and be with him and then go back to being happy next to my father.

Mr. Rodriguez's step-father, Hector Rodriguez, also expressed to the Court that Mr. Rodriguez's absence has greatly impacted Edelyn. He wrote (TRANSLATED FROM THE SPANISH):

> This young man has been exemplary and very respectful of his family and society. He has also demonstrated to be an excellent worker, being highly praised by various employers. Eddy is the father of an adolescent daughter, he has demonstrated to be a good father to the best of his ability. I must express to you that with his absence, this is affecting his daughter greatly. For all these reasons I would like you to take into consideration for a favorable result to Eddy if possible. Regardless, we will respect your decision.

Mr. Rodriguez's mother also recognizes that the impact on Mr. Rodriguez's daughter. Genoveva Rodriguez pleads to the Court for its leniency (TRANSLATED FROM THE SPANISH):

> Throughout his adult life he has always been dedicated to working, demonstrating that this young man is a good worker to the point that he was recognized by several of his employers. He also demonstrated to be a citizen of good character morals, respectful of the laws and people. Eddy is the father of an adolescent daughter for whom he has cared for and guided to be on a good path, in these moments his daughter is in great need of Eddy's help. For all these qualities and necessities I beg you your Honor to take into consideration in favor of my son Eddy, so that he may continue to lead a productive life in this nation and so he may continue to take care of his adolescent daughter who needs him. We shall respect your decision.

Ebder Fernandez, Mr. Rodriguez's nephew, writes the following:

> My only wish right now is to see my uncle Eddy De La Cruz. I have learned a lot from him and he has inspired to become a better person. I've only visited him once and it was of the hardest things to see one of your loved ones in that position. I would love to see him one more time but it's so hard to look at him without breaking down.

Chelsea Fernandez, Mr. Rodriguez's niece, writes the following:

> My wish right now is to see my amazing uncle, Eddy De La Cruz. He's a sweet, loving, and caring person. I love him so much that I can't even explain in one letter.

Gabriella Morales, Mr. Rodriguez's niece, writes the following:

> I'm six years old. I really miss my uncle his name is Eddy De La Cruz but I call him Tito. I miss him very much and I want him to be home with me. He is a great person and a great uncle.

Marlyn Rodriguez, Mr. Rodriguez's cousin, writes the following:

> We grew up together and we are cousins, but he is a brother that I never had. Eddy is a very kind and hardworking person. I love him with all my heart and I would love if he came back home. He is good father and I can't wait until he comes back home like old times.

Mr. Rodriguez's brother in law, Raul Melgarejo, wrote about Mr. Rodriguez's kindness toward others. He wrote (TRANSLATED FROM THE SPANISH):

> I've had the privilege of knowing Eddy. What gets my attention the most about his personality is his integrity for others. Anytime there is someone who needs a helping hand in which to confide in, they can find in him. As a father, he always worries about the personal realization and intelligence of his kids. With his parents and siblings he was always respectful and showed he cared for everyone. I can continue to write so many things about Eddy de la Cruz, but I think these are the ones that stand out the most to me.

Rafael Morales, Mr. Rodriguez's friend, wrote:

> I have nothing but excellent things to say about him. First and foremost he is an excellent father, who is very responsible for his child and makes sure she has all the necessary essentials to live a happy and comfortable life. Mr. DeLaCruz is dedicated to working mainly to provide for his family. He is very responsible with his job.

Ysabel Aguilo, Mr. Rodriguez's friend, wrote:

> He's a very good person and friend she is professional, and responsible, he is always available for others.

Mr. Rodriguez's aunt describes him as a man with a "generous heart." Belque Ampano wrote (TRANSLATED FROM THE SPANISH):

> He is a good worker, loving to his family, has a very generous heart to the point of being left with nothing but having given it to someone in need. Because of the way that he is I pray to God to allow us to be with him again, it is my greatest wish.

### III. SENTENCING CONSIDERATIONS UNDER 18 U.S.C. 3553

Ultimately, we suggest that a sentence outside the guidelines, as per 18 U.S.C. §3553 is appropriate here. As the Court knows, the statute instructs that "[t]he court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth" as outlined below. We respectfully suggest that the balance of all of these factors weigh in favor of a sentence of time served, which would meet the sentencing goals of punishment and deterrence, while allowing Mr. Rodriguez to be deported, as he is a permanent resident with a felony conviction.

*Nature of Offense and the history and characteristics of the defendant:*

Nothing herein suggests that the crime which has brought Mr. Rodriguez before this Court is not serious, nor do we intend to downplay that seriousness. We ask only that it be viewed in context. Mr. Rodriguez has always worked for a living. His criminal actions took place over a relatively short period of time.

*The Need for Deterrence*:

To the extent that criminal sanctions do have a general deterrent effect, the certainty and swiftness of punishment have a far greater deterrent effect than the severity of the sanction. Mr. Rodriguez was swiftly arrested, has been incarcerated since the events in question, and will be deported. Punishment is certain.

We thus also submit that in Rodriguez's case the needs of individual deterrence were met long before his case came before this Court for sentencing.

### IV. SENTENCING RECOMMENDATION

Due to the fact that it is nearly certain that Mr. Rodriguez will be deported, his ability to have a meaningful relationship with his family in the future (as they nearly all reside in the United States) will be severely curtailed. Even with no jail, that punishment is significant. Coupled with the amount of jail time he has already served, we would suggest a sentence of time served would be appropriate.

### V. CONCLUSION

As detailed extensively above, we believe that in this case a sentence of time served would provide an adequately onerous sentence that would be in keeping with and would not compromise the needs of justice: a sentence sufficient, but not greater than necessary. We ask the Court to consider the following words from his daughter:

> My dad has been with me since I was born. Even though he is far away from me and I can't be with him at this moment, I miss him a lot and I wish I could be with him. Even though he is not by my side, in the future I know we will be together one day. I cry every day and night thinking about him, wishing he was here with me in these moments when I need him the most.

Respectfully submitted,

BRILL LEGAL GROUP, P.C.

By: Peter E. Brill
15 Maiden Lane
Suite 1500
New York, NY 10038
(888) 315-9841